NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO B.A.

No. 1 CA-JV 23-0004
FILED 9-19-2023

---

Appeal from the Superior Court in Maricopa County
No. JD506498
The Honorable Cassie Bray Woo, Judge

**AFFIRMED**

---

COUNSEL

David W. Bell, Higley
*Counsel for Appellant*

The Huff Law Firm, PLLC, Tucson
By Laura J. Huff, Daniel R. Huff
*Counsel for Appellee*

Arizona Attorney General's Office, Tucson
Jennifer L. Thorson
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Cynthia J. Bailey and Judge Brian Y. Furuya joined.

---

**M O R S E**, Judge:

¶1        Charles A. ("Father") appeals the juvenile court's order terminating his parental rights.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Father and Kimberlee K. ("Mother") are the biological parents of B.A. ("Child"), who was born substance-exposed to methamphetamine in December 2016.  The court later terminated Mother's parental rights, and she is not a party to this appeal.

¶3        Soon after Child's birth, the Department of Child Safety ("DCS") took temporary physical custody of Child and filed a dependency petition.  At the time, Father was living out-of-state but eventually gained custody of Child and the court dismissed the dependency.

¶4        In July 2020, Father was treated at a psychiatric facility where he tested positive for methamphetamine, amphetamine, and ecstasy.  Meanwhile, paternal relatives took Child to California, and California child protective services placed Child with a paternal aunt.

¶5        In August 2020, California police investigated Father after he tried to retrieve Child from paternal aunt's home.  Officers noted that Father was fidgety, speaking rapidly, and "could not stop moving."  Father admitted to drinking a beer while driving to the parental aunt's home, and officers found an open beer can and brass knuckles in Father's car.  Officers determined Father was under the influence of methamphetamine and amphetamine and arrested him.  After his release later that night, Father returned to paternal aunt's home and absconded with Child but was eventually arrested.  Father pled guilty to burglary and possession of a weapon and was incarcerated until April 2021.

¶6        Child had virtual visits with Father in prison.  During those visits, Child appeared uncomfortable and often asked to end visits early.  Meanwhile, California and Arizona courts determined that Arizona retained jurisdiction over Child, so DCS took custody of Child and filed a dependency petition, which the court eventually granted.

¶7        In her foster home, Child disclosed past physical abuse by Father and displayed behaviors indicative of past trauma, including disassociation.  DCS referred Child for physical and behavioral therapy.  DCS also consulted its unit psychologist, who recommended no visits until

Child worked with her therapist and encouraged Father to write letters to Child.

¶8            Father was released from prison and placed on four years' probation.  The terms of his probation included refraining from drugs, submitting to substance-abuse testing, and completing a "1 year child abuse program."  Father's probation terms also prohibited him from having any contact with Child except by court order.  The California courts issued a restraining order consistent with the probationary terms.  Father's probation was later transferred to Arizona.

¶9            During the dependency, DCS referred Father for substance-abuse testing and treatment, a psychological evaluation, and clinically supervised visits.  Father's evaluating psychologist diagnosed him with anxiety, depression, and amphetamine-use disorders and recommended a psychiatric evaluation.  The psychologist gave Father a fair prognosis of his ability to parent Child in the future but noted that the prognosis depended on his success in services.

¶10           Father failed to participate consistently with substance-abuse testing, often missing months at a time.  In April 2021, after Father was released from prison, DCS established drug-testing services.  Between late April 2021 and November 2021, Father submitted 28 negative drug tests but failed to call in for scheduled testing 20 times, went several weeks without calling in, submitted two diluted tests, and tested positive for methamphetamine on August 19, 2021.  Father was closed out of testing services after November 2021, "due to missing scheduled tests."  In April 2022, DCS "re-referred" Father for drug testing.  Between May 2022 and September 2022, Father submitted two negative drug tests but again failed to call in for scheduled testing 13 times, went several weeks without calling in, and tested positive for methamphetamine on June 28, 2022.

¶11           Father also failed to participate consistently in substance-abuse treatment.  DCS referred Father for substance-abuse treatment in June 2021, but his referral closed a few months later when Father failed to engage in services.  Father then told DCS he would complete substance-abuse treatment through a different agency and completed an initial intake in October 2021, but did not complete any substance-abuse treatment.  DCS later followed up with Father about engaging services and he said that he "would re-engage" substance-abuse treatment in January 2022.  In February 2022, Father completed a substance-abuse assessment, acknowledged relapsing in August 2021, and agreed to complete 12 sessions of substance-abuse treatment, scheduled to begin in

March 2022.  Shortly after, DCS moved to terminate Father's parental rights under the nine- and fifteen-months out-of-home placement and chronic-substance-abuse grounds.

¶12        After moving for termination, DCS reported Father was "not attending his substance abuse groups" and that he was "reminded of group attendance and potential closure if he did not engage."  A couple of months later, in June 2022, DCS again referred Father for substance-abuse treatment.  Father attended four scheduled substance-abuse group sessions, but his referrals ultimately closed for lack of participation.  Father completed parenting classes but failed to attend individual counseling regularly, and failed to complete a child-abuse program.

¶13        After a five-day trial, the court denied termination under the nine-months out-of-home placement ground but granted it as to the other grounds and found termination was in Child's best interests.  Father timely appealed, and we have jurisdiction under A.R.S. § 8-235(A).

## DISCUSSION

¶14        Parents have a fundamental right to the custody and control of their children, but that right is not absolute.  *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248–49, ¶¶ 11–12 (2000).  To terminate a parent's rights, a court must (1) find a statutory ground for termination under A.R.S. § 8-533 by clear and convincing evidence and (2) determine, by a preponderance of the evidence, that termination is in the child's best interests.  *Id.* at 249, ¶ 12 (clear and convincing evidence); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 42 (2005) (preponderance of the evidence); *see* A.R.S. § 8-533(B) (requiring at least one statutory ground and a best-interests finding).  Because the court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts, we accept the court's findings of fact if reasonable evidence supports them and will affirm an order terminating parental rights unless it is clearly erroneous.  *Brionna J. v. Dep't of Child Safety*, --- Ariz. ---, ---, ¶ 30, 533 P.3d 202, 209, ¶ 30 (2023).  A conclusion is not clearly erroneous unless this Court determines "as a matter of law that no one could reasonably find the [supporting] evidence" meets the applicable burden of proof.  *Id.* at 210, ¶ 31 (quoting *Murillo v. Hernandez*, 79 Ariz. 1, 9 (1955)).

¶15        Though the court terminated Father's parental rights on more than one statutory ground under A.R.S. § 8-533(B), we will affirm the termination if any one of the statutory grounds is proven and if the

termination is in the best interests of Child.  *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002).

## I.      Chronic-Substance-Abuse Ground.

**¶16**          Father argues that (1) his positive drug tests and inconsistent participation in drug testing should be "assessed in conjunction with" DCS's "failure to allow him to have contact with [Child]," and (2) there was "insufficient evidence presented for the court to determine that any substance abuse concerns rose to such a level as to disqualify Father from being able to provide minimally adequate parenting."

**¶17**          Parental rights may be terminated when a parent is unable to discharge "parental responsibilities" due to "a history of chronic abuse of dangerous drugs, controlled substances or alcohol and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period."  A.R.S. § 8-533(B)(3).  "Chronic substance abuse is long-lasting but not necessarily constant substance abuse."  *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 17 (App. 2016).

**¶18**          Even though Father asserts that he completed some substance-abuse counseling and parenting classes, the court heard and received evidence that from June 2021 to June 2022, Father failed to engage in any substance-abuse treatment beyond an initial intake and psychiatric evaluation and tested positive for methamphetamine during the dependency.  The court also heard evidence of Father's history of drug use before the dependency, his failure to participate in drug treatment, and his positive and missed drug tests during the dependency.  Specifically, Father reported using methamphetamine for decades, failed to engage in substance-abuse treatment until June 2022, was diagnosed with amphetamine-use disorder, repeatedly failed to participate in drug testing, submitted diluted drug tests, and tested positive for methamphetamine in August 2021 and June 2022.

**¶19**          This evidence adequately supports the court's finding that his drug abuse would continue for a prolonged indeterminate period and render Father unable to discharge his parental responsibilities. *See Jennifer S.*, 240 Ariz. at 287–88, ¶¶ 17–18, 21, 25 (citing "decades-long history of substance abuse," drug use "during the dependency," and parent's "refus[al] to take most of her required drug tests" in affirming termination on the chronic-substance-abuse ground); *Raymond F. v. Dep't of Child Safety*, 224 Ariz. 373, 379, ¶¶ 27, 29 (App. 2010) (noting parent's history of drug use, positive tests, and "a two-month period in which he did not submit to

testing" was "evidence [the parent] has not overcome his dependence on drugs" and that drug use was chronic and would continue).[1]

**¶20**        Father testified he stopped drug testing after June 2022 as he was "tired" of DCS not allowing visitation with Child. But Father's lack of visitation with Child does not absolve him of participating in drug testing and substance-abuse treatment, as Child "should not be forced to wait for [her] parent to grow up" and her "interest in permanency must prevail over [her] parent's uncertain battle with drugs." *Jennifer S.*, 240 Ariz. at 287, ¶ 17 (quoting *Raymond F.*, 224 Ariz. at 378, ¶ 25).

**¶21**        Reasonable evidence supports the court's findings. *See Brionna J.*, --- Ariz. at ---, ¶ 30, 533 P.3d at 209, ¶ 30. Thus, the court did not clearly err in finding that DCS established, by clear and convincing evidence, termination of Father's parental rights was warranted under A.R.S. § 8-533(B)(3). *Id.* at 210, ¶ 31. Because we affirm the court's termination order based on Father's chronic substance-abuse, we need not reach Father's arguments on the fifteen-months out-of-home placement ground. *Jesus M.*, 203 Ariz. at 280, ¶ 3.

---

[1]     *See also Nicole W. v. Dep't of Child Safety*, 1 CA-JV 20-0340, 2021 WL 3732259, at *3, ¶ 21 (Ariz. App. Aug. 24, 2021) (mem. decision) (including "diluted drug tests, missed drug testing, and non-attendance of child family team meetings" as evidence rebutting the mother's claims of rehabilitation); *Jennifer W. v. Dep't of Child Safety*, 1 CA-JV 19-0261, 2020 WL 1313615, at *3, ¶ 13 (Ariz. App. Mar. 19, 2020) (mem. decision) (noting that many missed tests and many positive tests "well supported" the court's conclusion that drug use would continue); *Jennifer W. v. Dep't of Child Safety*, 1 CA-JV 18-0302, 2019 WL 990679, at *3, ¶ 15 (Ariz. App. Feb. 28, 2019) (mem. decision) ("There was sufficient evidence for the court to reasonably conclude that Mother's history of drug use coupled with her failure to submit to any urinalysis or hair follicle testing indicates chronic substance abuse."); *Paula J. v. Dep't of Child Safety*, 2 CA-JV 2017-0111, 2018 WL 679383, at *5, ¶ 20 (Ariz. App. Feb. 1, 2018) (mem. decision) (noting the "negative inferences the court was permitted to draw" from the period of missed drug tests); *Megan M. v. Matthew M.*, 1 CA-JV 18-0105, 2018 WL 4208992, at *2, ¶ 10 (Ariz. App. Sept. 4, 2018) (mem. decision) ("Mother's argument that she tested negative at times after completing treatment overlooks that she also regularly missed testing or submitted diluted tests, creating a reasonable inference that she had not resolved her substance abuse issues.").

## II.    Best Interests.

¶22        Father argues the court failed to consider all the circumstances, particularly the lack of visitation with Child.

¶23        Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance or be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018).

¶24        The court may find a child would benefit from termination if there is an adoption plan or if the child is adoptable, *id.* at 150–51, ¶¶ 13–14, or if the child "would benefit psychologically from the stability an adoption would provide," *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994). Conversely, the court may find a child would be harmed by the continuation of the parent-child relationship "where there is clear and convincing evidence of parental unfitness which has not been remedied notwithstanding the provision of services by [DCS] and which detrimentally affects the child's well-being." *Pima Cnty. Juv. Action No. S-2460*, 162 Ariz. 156, 158 (App. 1989).

¶25        Here, the court found termination would benefit Child because her foster family wanted to adopt her and was meeting her needs, including her behavioral-health needs. The court also found adoption would provide Child a safe and stable home and that Child required a permanent home, free of substance abuse, to assist her in overcoming her past trauma. The court further concluded that maintaining Father's parental rights would be detrimental to Child because he was not actively working to remedy his substance-abuse issues. And Father did not understand Child's trauma or needs. Reasonable evidence supports these findings.

¶26        Father nonetheless argues the court should have considered his lack of visits as part of the total circumstances. But the record does not support Father's contention. The court based its order on "testimony,

admitted evidence, and the entire court record," and recited six pages of evidence about visitation. The court thus considered the very evidence Father cites, but ultimately determined that termination was in Child's best interests. We find no error in how the court weighed the evidence. *See Brionna J.*, --- Ariz. at ---, ¶ 30, 533 P.3d at 210, ¶ 31 (noting that juvenile courts are in the best position to weigh the evidence).

**CONCLUSION**

¶27        We affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA